AUSA: Getzel Berger

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**26 MAG 1694**

UNITED STATES OF AMERICA

v.

FELIX MEJIA ROSARIO,

Defendant.

**SEALED COMPLAINT**

Violations of 18 U.S.C. §§ 922 and 924;
21 U.S.C. § 846

COUNTY OF OFFENSE:
BRONX

SOUTHERN DISTRICT OF NEW YORK, ss.:

NICHOLAS INDAL, being duly sworn, deposes and says that he is a Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI"), and charges as follows:

### COUNT ONE
**(Unlicensed Dealing of Firearms)**

1. Between at least in or around April 2025 through at least in or around April 2026, in the Southern District of New York and elsewhere, FELIX MEJIA ROSARIO, the defendant, not being a licensed importer, licensed manufacturer, or licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, willfully and knowingly engaged in the business of importing, manufacturing, and dealing in firearms, and in the course of such business shipped, transported, and received a firearm in interstate and foreign commerce, and aided and abetted the same, to wit, MEJIA ROSARIO organized the unlicensed sale of a Glock 23 pistol on or about June 4, 2025; organized the unlicensed sale of a Glock 23 pistol on or about October 15, 2025; and attempted to organize additional unlicensed firearms sales.

(Title 18, United States Code, Sections 922(a)(1)(A) and 2.)

### COUNT TWO
**(Unlawful Interstate Transfer of Firearms)**

2. On or about October 15, 2025, in the Southern District of New York and elsewhere, FELIX MEJIA ROSARIO, the defendant, not being a licensed importer, licensed manufacturer, licensed dealer, or licensed collector within the meaning of Chapter 44, Title 18, United States Code, willfully transferred, sold, traded, gave, transported, and delivered a firearm, and attempted to do so, to another person who was not a licensed importer, licensed manufacturer, licensed dealer, or licensed collector of firearms within the meaning of Chapter 44, Title 18, United States Code, knowing and with reasonable cause to believe that said person was not then residing in New Jersey, the State in which MEJIA ROSARIO was then residing, to wit, MEJIA ROSARIO transferred, and caused others to transfer, a firearm in the Bronx to an individual whom MEJIA ROSARIO knew resided in New York.

(Title 18, United States Code, Sections 922(a)(5) and 2.)

## COUNT THREE
### (Conspiracy to Distribute Narcotics)

3.      In or about April 2026, in the Southern District of New York and elsewhere, FELIX MEJIA ROSARIO, the defendant, and others known and unknown, knowingly and intentionally combined, conspired, confederated, and agreed together and with each other to violate the controlled substance laws of the United States.

4.      It was a part and an object of the conspiracy that FELIX MEJIA ROSARIO, the defendant, and others known and unknown, would and did distribute and possess with intent to distribute narcotics, in violation of Title 21, United States Code, Section 841(a)(1).

5.      The controlled substance involved in the offense was 44 grams and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(C).

(Title 21, United States Code, Section 846.)

## COUNT FOUR
### (Firearm Use, Carrying, and Possession)

6.      From on or about April 25, 2026 to on or about April 26, 2026, in the Southern District of New York and elsewhere, FELIX MEJIA ROSARIO, the defendant, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, namely, the drug trafficking crime charged in Count Three of this Complaint, knowingly used and carried a firearm, and in furtherance of such crime, possessed a firearm.

(Title 18, United States Code, Section 924(c)(1)(A)(i).)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

7.      I am a Special Agent with HSI, and I have been personally involved in the investigation of this matter.  This affidavit is based upon my personal participation in the investigation, and my conversations with law enforcement officers, law enforcement employees, and witnesses, as well as my review of documents.  Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation.  Where the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

8.      Based on my participation in the investigation, including conversations with the confidential sources listed below, conversations with other members of law enforcement, and review of reports and communications, I have learned, among other things, the following:

2

a.    In or about 2025 and 2026, two HSI confidential sources ("CS-1"[1] and "CS-2"[2]), working at the direction of law enforcement, had multiple conversations with FELIX MEJIA ROSARIO, the defendant, in which MEJIA ROSARIO agreed to organized and arrange gun sales to CS-1, who was purportedly seeking to purchase multiple firearms.  During those conversations, CS-1 told MEJIA ROSARIO that CS-1 lived in the Bronx.

### The June 4, 2025 Gun Sale

b.    On or about June 4, 2025, MEJIA ROSARIO, CS-1, and CS-2 met in New Jersey for the purpose of MEJIA ROSARIO organizing and arranging a gun sale to CS-1.  The meeting and subsequent events were audio-recorded and surveilled by law enforcement.  During the meeting, MEJIA ROSARIO called another individual ("CC-1") in the presence of CS-1 and CS-2.  During that call, CC-1 directed the three individuals to meet with another individual ("CC-2") in New Jersey.  MEJIA ROSARIO, CS-1, and CS-2 then drove to meet CC-2.  At the meeting, CS-1 handed MEJIA ROSARIO approximately $1,100, of which MEJIA ROSARIO kept approximately $100 and gave the rest to CC-2.  CC-2 then handed MEJIA ROSARIO a blue bag containing a Glock 23 pistol, which MEJIA ROSARIO handed to CS-1.

### The September 15, 2025 Attempted Gun Sales

c.    On or about September 15, 2025, MEJIA ROSARIO took CS-1 to meet two individuals in New Jersey for the purpose of MEJIA ROSARIO organize sales of additional firearms from those individuals to CS-1. No purchase occurred on that day.

### The October 15, 2025 Gun Sale

d.    On or about October 15, 2025, MEJIA ROSARIO, CS-1, and CS-2 went to a location in the Bronx specified by MEJIA ROSARIO for the purpose of organizing and arranging another gun sale to CS-1.  The meeting was audio- and video-recorded and surveilled by law enforcement.  At the specified location, CS-1 gave MEJIA ROSARIO approximately $1,500.  MEJIA ROSARIO then went into a building and returned with another individual ("CC-3"), after which MEJIA ROSARIO and CC-3 entered a car in which CS-1 was sitting.  In the car, CC-3 handed a Glock 23 pistol to MEJIA ROSARIO.  MEJIA ROSARIO racked the gun and handed it to CS-1.

---

[1] CS-1 has been a confidential source for HSI since in or about April 2025.  CS-1 is cooperating with the Government in the hopes of obtaining leniency at any future sentencing on currently pending firearms charges.  In addition to the pending charges, CS-1 has multiple prior convictions, including multiple felony drug convictions.  Information provided by CS-1 to date has proven credible and reliable by independent evidence.

[2] CS-2 has been a confidential source for HSI since in or about August 2025.  CS-2 is assisting law enforcement in an effort to help CS-1 obtain leniency at any future sentencing.  CS-2 may also receive financial benefits in the future.  Information provided by CS-2 has proven credible and reliable by independent evidence.

**The April 2026 Drug Shipment and Subsequent Threats**

        e.      In or about April 2026, MEJIA ROSARIO contacted CS-2 and instructed CS-2 to pick up a package ("Package-1") and bring it to MEJIA ROSARIO.  After CS-2 refused, an unknown individual nevertheless delivered Package-1 to CS-2's house.  MEJIA ROSARIO then instructed CS-2 to deliver Package-1 to MEJIA ROSARIO.

        f.      CS-2 opened Package-1, which contained a white powdery substance, as pictured below, which CS-2 believed to be cocaine.  Based on my review of the photograph, as well as my training and experience, I also believe that the substance depicted below appears to be powder cocaine.



        g.      Between on or about April 22, 2026 and April 24, 2026, MEJIA ROSARIO and another individual ("CC-4") made a three-way phone call to CS-1, during which MEJIA ROSARIO and CC-4 urged CS-1 to ensure that CS-2 followed MEJIA ROSARIO's instructions regarding the delivery of Package-1.  CS-1 was in the Bronx at the time of the call.

        h.      After CS-2 refused to deliver the package, MEJIA ROSARIO told CS-2 that CC-4 would pick up Package-1 from CS-2.  CS-2 placed Package-1 outside CS-2's home, after which it was picked up.

        i.      On or about April 25, 2026, MEJIA ROSARIO instructed CS-2 by phone to meet MEJIA ROSARIO at his residence in New Jersey.  CS-2 drove to MEJIA ROSARIO's residence on or about the evening of April 25, 2026 or the early morning of April 26, 2025.  When CS-2 arrived, MEJIA ROSARIO pulled a handgun out of his jacket and pointed it at CS-2's head, threatening to kill CS-2 because, among other things, MEJIA ROSARIO believed that CS-2 had adulterated the contents of Package-1 with baking soda.

        j.      During the confrontation, CS-2 video-called CS-1 in MEJIA ROSARIO's presence.  CS-1 was in the Bronx at the time of the call, consistent with CS-1's prior statements to MEJIA ROSARIO that CS-1 lived in the Bronx.  MEJIA ROSARIO spoke to CS-1 and accused

4

CS-2 of stealing the contents of Package-1.  MEJIA ROSARIO had a small scale with him and showed CS-1 by video that the substance weighed approximately 44 grams even though MEJIA ROSARIO had purchased only approximately 30 grams.  MEJIA ROSARIO stated that the additional weight indicated that the substance had been adulterated or mixed with baking soda.

9.      I believe the substance that FELIX MEJIA ROSARIO, the defendant, arranged to be delivered to CS-2 was cocaine, including because (i) as noted above, based on my training and experience, the substance depicted in the above photograph is consistent with the appearance of powder cocaine; (ii) as set forth above, MEJIA ROSARIO quantified the substance using grams, which, based on my training and experience, is a common way of quantifying powder cocaine; (iii) as set forth above, MEJIA ROSARIO accused CS-2 of replacing the substance with baking soda, which, based on my training and experience, is sometimes used to mimic powder cocaine; (iv) CS-2, who physically observed the substance, stated that CS-2 believes it was powder cocaine; and (v) CS-1, who observed the substance on the above-mentioned video call, stated that CS-1 believes it was powder cocaine.

10.      Based on my conversations with other members of law enforcement and review of records, I know that a search of the Firearms Licensing System maintained by the Bureau of Alcohol, Tobacco, Firearms and Explosives revealed no firearms licenses held by FELIX MEJIA ROSARIO, the defendant.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of FELIX MEJIA ROSARIO, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

Nicholas Indal (by VF with permission)
_____
Nicholas Indal
Special Agent
Department of Homeland Security
Homeland Security Investigations

Sworn to me through the transmission of
this Complaint by reliable electronic
means (telephone), pursuant to Federal Rules
of Criminal Procedure 41(d)(3) and 4.1
this 5th day of May, 2026.

_____
THE HONORABLE VALERIE FIGUEREDO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK